FILED

2004 AUG -3  A 5: 03

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CONNECTICUT INDEMNITY COMPANY, | : | CASE NO.: 301 CV 1410 (RNC) |
| Plaintiff, | : | |
| v. | : | |
| FRANK PERROTTI, JR., | : | |
| Defendant. | : | AUGUST 2, 2004 |

### JOINT PRETRIAL MEMORANDUM

**1.    Trial Counsel:**

James W. Carbin, Esq.
Duane, Morris LLP
744 Broad Street, Suite 1200
Newark, New Jersey 07102-3889
Tele: 973.424.2000
Fax:  973.424.2001

Plaintiff

John L. Senning, Esq.
Senning & Rieder
16 Saybrook Road
Essex, CT  06426
Tele: 860.767.2618
Fax:  860.767.2740

Defendant

**2.    Jurisdiction:**

This Court has jurisdiction of this Declaratory Judgment pursuant to 28 U.S.C., § 2200, *et seq.*
and Rule 57 of the Federal Rules of Civil Procedure.  This is an admiralty and maritime claim
within the meaning of the Rule 9(H) of the Federal Rules of Civil Procedure and within the
admiralty jurisdiction of the Court pursuant to 28 U.S.C. § 1339.

**3.    Non Jury:**

This is a non-jury case.

**4.    Nature of Case:**

    **A.    Plaintiff CIC's Statement Regarding Nature of Case:**

Plaintiff CIC seeks judgment declaring:

    1.    The Policy of Marine insurance issued to defendant Frank Perrotti, jr. is rescinded due to the false, inaccurate and incomplete information supplied with the Application; or

    2.    That the Policy is not enforceable due to the lack of a meeting of the minds or due to a unilateral mistake by Defendant Perrotti or his agents; or

    3.    That the Policy did not cover defendant for the liability alleged by Crewmember Fourie; or

    4.    The defendant could have no liability to crewmember Fourie since defendant did not employ the seaman; or

    5.    Alternatively, that if the Policy is held valid and enforceable, Plaintiff is under no obligation to provide coverage to defendant for a liability for a crewmember injury which can only be legally asserted against the crewmember's employer, which defendant was not; and

    6.    Plaintiff further seeks recovery of the amount of a claim paid in the amount of $26,162.29 before discovering that that the Policy was a nullity or should be rescinded.

    **B.    Defendant Perrotti's Statement Regarding Nature of Case:**

Plaintiff, Connecticut Indemnity Company ("CIC"), brings this action seeking a declaratory judgment that a marine insurance policy (the "Policy") it sold to defendant Frank Perrotti

("Perrotti") is void due to inaccuracies in the insurance application. CIC claims it is entitled to

the refund of a claim payment it contends it made before learning of the alleged inaccuracies.

Perrotti denies CIC's allegations and seeks damages for its refusal to defend the Fourie Action

and provide him with coverage for the personal injury claim brought by a third party. CIC

contends that under federal admiralty law, the Policy is voidable at its option whether the

inaccuracies in the application were intentional or not. Perrotti contends that under the specific

terms of the Policy, CIC is obligated to provide coverage unless it can prove at trial that Perrotti

intentionally made misrepresentations of or concealed material facts in order to deceive CIC. By

denying CIC's motion for summary judgment in this Court's Ruling and Order dated July 16,

2003, the Court ruled that CIC must prove that Perrotti intentionally concealed or misrepresented

material facts or circumstances relating to the insurance so as to deceive CIC, whether before or

after the loss, in order to void the Policy. This Court also ruled that Connecticut law governs the

Policy, not federal admiralty law.

5.    **Stipulations of Fact and Law:**

    A.    Plaintiff CIC, is a corporation organized and existing pursuant to the laws of one

        of the states of the United States with an office and place of business at 9 Farm

        Springs Road, Farmington, Connecticut, and is in the business of writing, *inter*

        *alia,* marine insurance.

    B.    Defendant Perrotti is an individual ~~residing~~ *with a business address* at 136 Bradley Road, Woodbridge,

        Connecticut  06525.

C.    On or about October 19, 1999, Perrotti through his insurance broker Scott Haney,

then of Dunlap Corporation, submitted a Yacht Application to Marine MGA, Inc.,

(the "Application") an underwriting agent for CIC, for the purpose of obtaining a

Marine Hull and Protection & Indemnity Insurance Policy (the "Policy") on a

1986 121 Foot Denison Yacht (the "Yacht"). Along with the Application, Perrotti

submitted a survey of the Yacht, which reported that the Yacht was registered in

the Cayman Islands. The Application for the Policy stated that the Yacht was to

be principally moored in Portsmouth, Rhode Island.

D.    Perrotti is the owner of one hundred percent (100%) of the shares of Clean Waste

Inc., and he is the sole Director and President of Clean Waste, Inc.

E.    Clean Waste Inc. is a Cayman Island corporation, with its principal place of

business in Georgetown, Grand Cayman Island, and is the registered owner of the

Yacht named "N.E.W.S."

F.    That the registered owner of the Yacht at the time of the Application was Clean

Waste, Inc.

G.    That the registered owner of the Yacht at the time the Policy was issued w as

Clean Waste, Inc.

H.    That the registered owner of the Yacht during the period of the Policy was Clean

Waste, Inc.

I.   That at all times during the Policy period, the Yacht was registered in
     Georgetown, Grand Cayman.

J.   That the insured in the Policy is defendant Frank Perrotti, Jr.

K.   Perrotti notified CIC of a claim for damage to the Yacht's propeller, shafts and
     port main strut, discovered on February 14, 2001.  CIC investigated the claim, had
     a surveyor inspect the Yacht in Florida on its behalf, and on or about April 9,
     2001, CIC paid this claim in the amount of $26,162.29 after applying the
     insurance policy deductible of $25,000.

6.   **Plaintiff CIC's Contention:**

1.   Plaintiff, Connecticut Indemnity Company ("CIC") is a United States corporation
     with an office and place of business at 9 Farm Springs Road, Farmington,
     Connecticut and, is in the business of writing, *inter alia,* marine insurance.

2.   CIC is not licensed to do insurance business in the Cayman Islands.

3.   Marine MGA, Inc. is a Managing General insurance Agency for CIC with
     authority to bind certain marine insurance for CIC during the relevant times
     pursuant to the limitations of a Managing General Agreement.

4.   Marine MGA is not licensed to do business in the Cayman Islands.

5.   The CIC Marine MGA agreement prohibited Marine MGA form agreeing to
     insure risks outside the United States.

6.    Defendant Frank Perrotti, Jr. ("Perrotti") is an individual resident at 136 Bradley Road, Woodbridge, Connecticut 06525.

7.    Clean Waste, Inc. is a Cayman Islands corporation with its only office in Georgetown, Cayman Islands.

8.    In September 1999, Clean Waste was preparing to purchase a 1986 121' Denison Marine Vessel. It named the vessel M/Y NEWS.

9.    The vessel was managed for Clean Waste by William Taylor of Sterling Yachts, Inc.

10.    Clean Waste determined to homeport the M/Y NEWS in Georgetown, Cayman Islands.

11.    Clean Waste registered the M/Y NEWS under the British flag October 5, 1999.

12.    Prior to the purchase Clean Waste sought to obtain insurance on the vessel and its operation for the closing October 5, 1999.

13.    Mr. Jay Lorisnky of First Nations ("Lorinsky" or "First Nations") was asked to procure the insurance.

14.    In late November 1999, First Nations approached Liberty Mutual Insurance for insurance on the vessel for Clean Waste.

15.    Liberty Mutual advised Lorinsky that the foreign registration of the vessel would affect the insuring terms and the premium price.

16.    Lorinsky reported to Taylor of Sterling, Clean Waste, Inc.'s manager, that the offshore registration would affect the terms and the pricing of the insurance.

17.    Liberty Mutual provided a quotation for Port Risk only, meaning it only insured the vessel while laid up, at a premium of $27,960 to Clean Waste, Inc. as the insured.

18.    When Lorinsky reported the Liberty Mutual Premium cost, he was told it was too expensive and was instructed to get a lower premium.

19.    On October 5, 1999, Lorinsky issued a binder for the Liberty Mutual Insurance.

20.    On October 5, 1999, Clean Waste closed the purchase of the Vessel.

21.    Simultaneously, Liberty Mutual determined it did not want to provide the insurance and withdrew its quotation.

22.    Liberty Mutual then sought to acquire the insurance through its internal brokerage department, Helmsman Agency ("Helmsman") and approached a number of other insurers.

23.    Helmsman approached a number of other insurers.

24.    Liberty Mutual/Helmsman informed Lorisnky that many insurers would not insure the Vessel because it was not a deepwater boat, and was registered in Cayman Islands.

25.    Lorisnky reported Frank Perotti that some insurers would not cover the Vessel because it was not a deepwater boat.

26.    On October 6 1999, Helmsman obtained two quotes for the vessel from Cigna insurance.

27.    Both Cigna quotes were in the name of Clean Waste, Inc.

28.  The first Cigna Quote was for Port risk was $27,960. The premium would increase once the vessel was put into navigation.

29.  The second Cigna quote was for limited navigation for a premium of $33,560.

30.  The Cigna quotes were rejected as too expensive.

31.  On about October 6, 1999, Lorinsky contacted Scott Hainey of the Dunlap Agency ("Hainey") to see if he could get cheaper insurance on the vessel.

32.  Hainey knew of Perotti as a valuable business account from his earlier employment at Liberty Mutual which had insured Perrotti's businesses.

33.  Hainey wanted to impress Perotti and Lorinsky to get future business from them.

34.  Hainey advised him he was able to handle marine insurance.

35.  Lorinsky told Hainey of the quotes from Liberty Mutual and from Cigna, and that Perrotti had rejected the quotes as too high.

36.  Lorinsky explained to Hainey everything he had told Liberty Mutual about the risk.

37.  Lorinsky told Hainey that Perotti had rejected the Liberty and Cigna quotes as too expensive.

38.  Lorinsky told Hainey not to waste their time unless he "could do better" and get a cheaper premium.

39.  Hainey asked for a copy of the earlier insurance information.

40.  Lorisnky faxed Hainey the two Cigna quotes showing Clean Waste, Inc. as the insured and asked him to "do better" on the premium.

41. Hainey read everything Lorinsky sent to him on the risk.

42. Hainey denies ever being told of Clean Waste, Inc. by Lorinsky.

43. Hainey denies being told of the earlier quotes from Cigna or from Liberty.

44. Hainey denies ever being told he was in competition with other insurers' quotes.

45. Hainey expected to be told if there were other insurers involved on the account.

46. Hainey expected to be told it he was being asked to replace another insurer and the reasons for the replacement.

47. Hainey denies he ever know of the Liberty Mutual quote or the Cigna placement.

48. Hainey testified he never heard of Clean Waste until review of the CIC Rescission letter dated July, 2001.

49. Hainey contacted John Sterling of Marine MGA, Inc. ("MGA") to procure insurance for the Vessel.

50. Hainey got a quotation from Marine MGA for under $20,000.

51. Sterling has 25 years experience underwriting marine vessel insurance.

52. Hainey completed a Yacht Application, signed it, and submitted to Marine MGA.

53. Hainey did not supply MGA any information about the earlier quotations and rejections of insurance for Clean Waste by Liberty Mutual or Cigna.

54. The applicant for the insurance is Frank Perrotti, Jr., address 136 Bradley Road, Woodbridge, CT 06525.

55. The Application for the Policy states that the Yacht was to be home ported in Portsmouth, Rhode Island.

56. The Yacht Application represents that vessel is home ported in Rhode Island.

57. Hainey completed the Yacht Application stating NO in response to the question about earlier insurance cancellation or non-renewals.

58. The Yacht Application is wrong because it shows insured as Perotti and not does not show the owner of the Vessel.

59. The Yacht Application is wrong because it is made in the name of Perrotti and not for Clean Waste, Inc.

60. The Application requested coverage for the vessel to navigate along the entire east coast of the US, Maine to Florida.

61. The navigation limits request was denied by Sterling who gave a quotation for waters form Maine to Virginia.

62. Hainey knew that the premium would increase if the vessel navigational limits were extended beyond the northeast water the Policy covered.

63. Hainey admits that Clean Waste Inc should have been named as the insured on the Yacht Application.

64. Hainey admits the Application is wrong because instead of Frank Perotti, jr., the Application should have been completed naming Clean Waste, Inc.

65. Hainey had never heard of the doctrine of Utmost Good Faith applicable to marine insurance and did not consider he had to give any information except what the application called for.

66. In reliance on the Application, John Sterling of Marine MGA bound the insurance on the Vessel.

67. The Policy issued naming Frank Perotti as the named insured as owner of the vessel M/Y NEWS with an effective period form October 19, 1999 for one year.

68. The CIC Policy is for Marine Insurance. The Policy covers against certain marine perils of physical loss to the hull, and the named insured against certain marine liabilities.

69. Had Marine MGA known that the Vessel was owned by Clean Waste, Inc., a foreign corporation, or was home ported or registered in the Cayman Islands, MGA would not have, and could not have, bound the Policy.

70. Crewmember Johan Fourie claimed to have been injured on board the vessel in April 2000, while employed as a crewmember.

71. The Fourie claim was first reported to MGA and CIC on May 30, 2001.

72. The Policy came up for renewal in October, 2000.

73. MGA sent a renewal notice to Hainey in August 2000.

74. The Policy was renewed for another one year term.

75. The only change in the renewal was a new Connecticut address for defendant Frank Perotti.

76. In Feb 2001, a claim for damage to the Yacht's propeller was submitted under the renewal Policy.

77. The propeller claim was submitted under the name of Perotti, not Clean Waste.

78.   The propeller claim was investigated by Marine MGA according to the claims handling arrangement between CIC and MGA whereby MGA handled all first party property claims under $50,000.

79.   The Propeller claim was a relatively small first party property damage claim that did not require any investigation of the ownership of the vessel.

80.   On April 9, 2000, the Propeller was paid by Marine MGA in the amount of $26,162.92 to Frank Perotti, as the named insured on the policy.

81.   On May 30, 2001, the claim by Johan Fourie under the Jones Act for crewman liability was first reported to Marine MGA.

82.   Perrotti's claim for coverage is for the third party Jones Act liability claim by Johan Fourie.

83.   Fourie's complaint for Jones Act liability as a crewmember could only be maintained against his employer.

84.   The Fourie crewmember claim was handled by Donald Roberts at CIC according to the claims handling arrangement between CIC and MGA whereby all third party liability claims were handled by CIC.

85.   As part of the standard investigation the Fourie crewmember claim, the employer of Fourie was investigated.

86.   During the investigation, CIC and Marine MGA first learned of the existence of Clean Waste, Inc., and its ownership of the Vessel, that the Vessel was registered in the Cayman Islands and home ported in the Cayman Islands, and that contrary

to the representations in the Application, Perrotti did not own the Yacht, the Yacht was not registered in the United States, and was not home ported in Rhode Island.

87.   Perotti was not the owner of the vessel MY NEWS at any time.

88.   Perotti did not employ Johan Fourie.

89.   Lorisnky has previously testified as an insurance expert witness for Perotti.

90.   Lorisnky recognized that the duty of Utmost Good Faith applies to all insurance requiring full and complete information be given to the underwriter.

91.   Lorinsky's normal practice is to review insurance quotes with the client to ensure it is correct.

92.   Lorinsky's normal practice is to review the Policy when issued to ensure it is correct.

93.   Lorinsky's normal practice is to supply the correct name of the owner to be insured even if not asked.

94.   Lorinsky agrees that the insurance application should have been completed for Clean Waste, Inc.

95.   Hainey of Dunlap agrees the Application is wrong because it was not completed in the name of Clean Waste, Inc. as the Applicant.

96.   Hainey's standard practice is to review a Policy once issued to ensure it is correct, and he did so here.

97.  The Complaint of CLEAN WASTE COMPLAINT against Plaintiff alleges:

(a)  In or about October of 1999, First Nations succeeded in obtaining insurance coverage in the name of Clean Waste, Inc. as evidenced by two separate Insurance Binders issued by or on behalf of insurance carriers, Liberty Mutual and CIGNA Corporation Group, evidencing coverage commitments in the requested range. Copies of said Insurance Binders are attached hereto as Exhibits A and B respectively.

(b)  Upon receiving information from representatives of said insurance carriers regarding the annual premium rates for such coverage as reflected in the separate binders, First Nations was requested to undertake further efforts to obtain similar coverage at better rates if possible.

(c)  On or about December 7 or 8, 1999 the Dunlap forwarded a "Yacht Application" signed by Frank Perrotti Jr. and dated December 7, 1999 to Marine MGA for processing and issuance of a policy providing the requested marine insurance coverage. A copy of said Yacht Application is attached hereto as Exhibit C.

7.  **Defendant Perrotti's Contention**:

A.  As 100% shareholder of Clean Waste Inc., President of the company, the sole director and the sole user of the Yacht for recreational purposes, Perrotti had an insurable interest in the Yacht. The funds used to purchase the yacht were solely

those of Perrotti.. Prior to the purchase of the Yacht, Perrotti had only owned one prior boat over 39', a wooden sailboat of approximately 40'.

B.    William Taylor of Sterling Yachts managed the Yacht on Perrotti and Clean Waste Inc.'s behalf.

C.    Perrotti did not intentionally conceal or misrepresent to CIC the fact that the Yacht was owned in the name of Clean Waste Inc. and registered in the Cayman Islands. As part of the Application for insurance, Perrotti submitted a survey to Marine MGA, along with the Application, which clearly stated that the Yacht was currently registered in the Cayman Islands.

D.    Also as part of the insurance Application process, a memo from William Taylor of Sterling Yacht Corp. was sent, along with the insurance Application to Marine MGA. The memo stated that Perrotti was considering keeping the Yacht under Cayman Registry.

E.    John Sterling ("Sterling") of Marine MGA, did not tell Perrotti or Perrotti's insurance broker Scott Hainey that CIC would not insure the Yacht if it was registered in the Cayman Islands.

F.    During the time the Yacht was insured by CIC, the Yacht never went to the Cayman Islands or anywhere in the Caribbean. CIC's Application for insurance did not ask where the Yacht was registered, nor did it ask for the name of the registered owner of the Yacht.

Perrotti provided to Marine MGA, at their request, a résumé of the Captain of the Yacht. Perrotti indicated in the Application to Marine MGA that the Yacht would be principally moored in Rhode Island, which it was.

G.    In October of 2000, Scott Haney of BDD forwarded to Sterling at Marine MGA, a bill of sale for a 22 foot Hackercraft that had been purchased by Clean Waste, Inc. and requested that it be included in the Policy. The Bill of Sale reflected the name Clean Waste, Inc. with a George Town Cayman Island address. The Bill of Sale was accompanied by an additional First Assignment document which clearly indicated Clean Waste, Inc. of George Town Cayman Islands as the assignee. Neither document made any reference to Frank Perrotti. Sterling included the Hackercraft on the Policy. This was prior to the renewal of the Policy in October of 2000.

H.    On February 24, 2000, Chris Haney sent a Property Loss Notice to Marine MGA stating that the Yacht has suffered propeller damage. Mark Rhodes surveyed the damage to the Yacht on February 21, 2001 while the Yacht was in dry-docked in Riviera Beach, Florida. (*See* CIC Bates No. 00046). On April 4, 2001, CIC paid the propeller damage claim of $26,162.29 to Clean Waste Inc. after applying the policy's $25,000 deductible.

I.    On or about August 8, 2000, Johan Fourie ("Fourie"), a crew member employed on the Yacht, was injured on board the Yacht while it was taking fuel in Newport, Rhode Island.

J.  Fourie filed suit against Clean Waste, Inc. and Frank Perrotti *in personam* ("The Fourie Action") and the motor Yacht N.E.W.S. *in rem* in the United States District for the Southern District of Florida on November 13, 2001, Case No.: SDFL 01-7735-Civ.-Martinez.

K.  Defendant Perrotti notified CIC of the filing of the Fourie Action and requested that they undertake the defense of the action, and or settle and pay the claim.  CIC refused to undertake a defense of the action and breached its duty to defend Perrotti under the terms of the Policy.  CIC had a duty to defend Perrotti under the terms of the Policy with or subject to a reservation of rights.

L.  On or about January 28, 2003, judgment was entered against Perrotti, Clean Waste, Inc., and the vessel *in rem* in the amount of $600,000.00.

M.  Due to CIC's refusal to undertake the defense of Perrotti and settle or pay the claim, Perrotti was obligated to obtain the law firm of Holland & Knight in Florida to defend the lawsuit, and the law firm of Robinson & Cole LLP in Connecticut as co-counsel to defend the matter.  Holland & Knight's and Robinson & Cole LLP's fees and expenses in defending the Fourie Action totaled $251,472.93 for which CIC is responsible.

N.  CIC is liable for Senning & Rieder's legal fees of $182,856.37 for defending this Declaratory Judgment Action.

8.    **Legal Issues:**

**A. CIC**

1.    There was no meeting of the minds when the Policy was negotiated and the Policy is a nullity.

2.    The Policy was the product of a Unilateral Mistake on the part of Perrotti or his agents rendering it a nullity or unenforceable.

3.    The risk was misrepresented to CIC rendering the policy voidable.

4.    The Policy clause number 12 relative to misrepresentation is void as a part of the Policy itself, and would not have come into existence but for the misrepresentations that led to the Policy being issued.

5.    The misrepresentations were intentional to obtain a lower premium rate.

6.    Assuming the Policy was valid, it would not cover Perrotti against the claim of Johan Fourie for liability under the Jones Act since such a third party liability claim can only be made against a crewmember's employer, and Perrotti was not Fourie's employer.

7.    Alternatively assuming the Policy is enforceable, Defendant has the burden of proving the obligation to make payment the claimant Fourie and the reasonableness of the settlement and both in amount and in its terms, and that the defense costs were reasonable.

**B. Perrotti**

1.    CIC has the burden of proof establishing that Perrotti intentionally concealed or misrepresented a material fact or circumstance in order to deceive CIC relating to this insurance whether before or after the Fourie casualty.

2.    Marine MGA is CIC's Agent, and CIC is bound by the actions and knowledge of MGA which knew or should have known of Clean Waste, Inc. of George Town, Cayman Islands.

3.    CIC waived its right and is estopped from arguing that the CIC Policy is void.

4.    The name of the registered owner of the Yacht was not material to CIC's risk since it was a new corporation formed solely for the purposes of registering the Yacht in the Cayman Islands.

5.    Clean Waste, Inc. has no prior loss history, and the relevant loss history was therefore that of Perrotti, or the captain operating the Yacht. (*See AXA Global Risks (OK) Ltd. v. Pierce*, Case No. 00-388 Civ. 2001 WL 1825853 (S.D. Fla. Nov. 8, 2001).

6.    Perrotti had no loss history and that was so indicated on the Application.

7.    Perrotti provided to Marine MGA the resume and credentials of the professional Captain who would captain the Yacht.

8.    The insurance application form did not inquire as to the name of the owner of the Yacht or the nature or place of its registration.

9.    Perrotti had an insurable interest in the Yacht being the sole shareholder, director and President of Clean Waste, Inc. the registered owner and had paid the $3,000,000 purchase price with his own funds.

9.    **Voir Dire (Non-Jury)**

10.   **List of Witnesses**

A.  **CIC**

1.    Donald Roberts.

Mr. Robert will testify that he was Program Claims Manager for CIC and investigated the Fourie Jones act liability claim when it was first submitted in May 2001; that as part of the standard investigation of the Jones Act claim, inquiries were made of who employed Fourie which led to the discovery that the Vessel was owned by an offshore corporation and was home ported and registered offshore. That CIC is not licensed to do business offshore the United states which led CIC to determine to consider the Policy void, and that the named insured Frank Perotti could not be insured against Jones Act liability for a vessel he did not own, and the Jones Act liability only extended to the crewmembers employer which was not Mr. Perrotti's.

Mr. Roberts will also testify that the $26,162 propeller property damage claim was a routine hull claim paid before discovery of the problems with the account.

2.    John Sterling.

Mr. Sterling will testify he was the underwriter of the Policy and never intended to or agreed to bind insurance for Clean Waste, Inc., that if he had been told the true identity of the vessel owner, he would not have and could not have agreed to insure the Vessel because the Agreement by which MGA acts for CIC prohibits the underwriting of offshore accounts and because neither CIC nor MGA are licensed to do business for offshore risks.

20

Mr. Sterling will further testify that the information on the Yacht Application was false in that it reflected a vessel owned by an individual resident in Connecticut with a US hull number and home ported in Portsmouth RI, whereas the Vessel was owned and home ported in Cayman Islands, a different risk.

Mr. Sterling will testify that the information given to him about the account was erroneous which wrongfully induced him to agree to the insurance.

3.    Scott Hainey

Scott Hainey will testify that he was the broker who completed the Yacht Application for defendant Perotti based upon information given to him by J Lorinsky; that he was never told of the existence of Clean Waste, Inc, the actual owner of the Vessel, and that he never told Mr. Sterling of Clean Waste, Inc.

That the Application was wrong because it should have been submitted in the name of Clean Waste, Inc. as the actual owner of the Vessel, not defendant Perotti.

Mr. Hainey denies Mr. Lorinsky's testimony that he was told to get a cheaper premium than the more expensive quotes from Liberty and Cigna procured in the name of Clean Waste by Mr. Lorisnky.

4.    J. Lorinsky.

Mr. Lorisnky will testify that he was requested to get insurance in the name for Clean Waste Inc. for the Vessel. He obtained quotes in Clean Waste's name from Liberty Mutual Insurance Company and from CIGNA. That both quotes were rejected as too expensive.

That he learned of the effect of the Vessel's offshore registration and homeport upon the insurance price and terms form Liberty Mutual and informed Clean Waste's management, and advised defendant that a number of insurers would not insure the Vessel.

That he then approached Scott Hainey to obtain insurance for Clean Waste, at a cheaper price and faxed to Hainey copies of CIGNA Quotes showing Clean Waste, Inc. as the insured.

Mr. Lorinsky will testify that the application should have been in the name of Clean Waste.

5.    William Taylor

Taylor will testify that the vessel was owned by Clean Waste, Inc. a Cayman Islands corporation, home ported in the Georgetown, Grand Cayman, with a British Registry. CIC reserves the opportunity to offer additional testimony in rebuttal.

**B. Perrotti**

1.    <u>Frank J. Perrotti, Jr.</u>  Perrotti will testify as to his purchase ownership and use of the Yacht and the insurance application process.  He will testify that he did not make any intentional misrepresentations or concealments of material facts in order to deceive CIC.

2.    <u>William Taylor.</u>  Bill Taylor will testify with respect to the purchase and registration of the Yacht, the application of insurance, the injury to Fourie, and the ultimate $600,000.00 judgment obtained by Fourie in the Fourie Action.

11.  **Non-Party Witness:**

   A.  <u>Scott Haney</u> of Bruen Deldin and DiDio Associates (formerly of Dunlap Corporation) will testify as to the information that he communicated to CIC and Marine MGA with respect to ownership, registration, and use of the Yacht.

   B.  <u>Jay Lorinsky</u> of First Nations Financial Services will testify as to Perrotti's request to him to find marine insurance for the Yacht and what steps he took to obtain marine insurance of the Yacht.

   C.  <u>Gregory J. Ligelis, Esq.</u> of Robinson & Cole will testify as to the Fourie Action settlement and Judgment and the legal bills incurred in litigation of Holland & Knight and Robinson & Cole LLP with respect to the Fourie Action and the registry of the Yacht.

   Perrotti reserves the opportunity to offer additional testimony in rebuttal.

12.  **Exhibits:**

   A.  **CIC Exhibits**

   (1)  CIC-Marine MGA Agreement-Roberts/Sterling;

   (2)  Yacht Policy;

   (3)  Check Settlement of Propeller Claim ,dated April 9, 2001;

   (4)  First Notice of Fourie Claim, dated May 30, 2001;

   (5)  Telefax to Investigator regarding Fourie Claim, dated May 31, 2001;

   (6)  Investigation Report regarding Fourie Claim, dated June 13, 2001;

   (7)  Rescission Letter, dated July 23, 2001;

**(8)**    Clean Waste v. CIC Complaint;

**(9)**    Fourie v. Clean Waste Complaint

**(10)**   Bruen Deldin letter to Marine MGA, dated October 10, 2000, (Sterling Exhibit #9);

**(11)**   Hacker Boat Company Assignment with Notes, (Sterling Exhibit #16);

**(12)**   Yacht Application, (Sterling Exhibit #1);

**(13)**   Yacht Application, (Perrotti Exhibit #13 – four (4) pages);

**(14)**   Certificate of British Registry, (Perrotti Exhibit #1);

**(15)**   Vessel Bill of Sale, dated October 5, 1999, (Sterling Exhibit #8);

**(16)**   John Sterling letter of December 15, 1999, (Sterling Exhibit #6);

**(17)**   Yacht Purchase and Sale Agreement, (Sterling Exhibit #5);

**(18)**   Insurance Binder with Liberty Mutual, dated October 5, 1999, (Sterling Exhibit #10) and Lorinsky Exhibit #7);

**(19)**   First Nations Financial Services, Inc., facsimile and enclosures for Clean Waste, Inc., (Sterling Exhibit 11);

**(20)**   Clean Waste, Inc., letter, dated April 19, 2000, (Perrotti Exhibit #3);

**(21)**   Helmsman fax, dated October 15, 1999, enclosing Binder, (Lorinsky Exhibit #8) for $27,960.000 Premium Port Risk for Clean Waste, Inc.;

**(22)**   Dunlop fax to First Nations, dated October 26, 1999, Premium Invoice for CIC Policy of $19,788.00, (Lorinsky Exhibit #11);

**(23)**   First Nations fax to Liberty Mutual, dated November 3, 1999, (Lorinsky Exhibit #12);

**(24)**   Liberty Mutual fax to First Nations, dated November 8, 1999, (Lorinsky Exhibit #13);

**(25)**   First Nations fax to Dunlop, dated December 7, 1999, with signed Application (Lorinsky Exhibit #10);

(6)  Memo from John Sterling of Marine MGA to Scott Haney at BDD re: navigational limits and adding Hackercraft to coverage dated 12/21/00 Bates No. BDD 0014

(7)  Letter from Scott Haney of Bruen Deldin & DiDio to John Sterling of Marine MGA re: Hackercraft and navigational limits Bates No. BDD-0013

(8)  Letter to James Carbin, Esq., counsel for CIC dated November 8, 2002 from John L. Senning, Esq. on behalf of Frank Perrotti Jr. requesting the providing of defense to the Fourie Florida litigation

*Note: Plaintiff reserves its right to object to (9) 4(10) not having yet seen these exhibits.*

(9)  Copies of invoices from Robinson & Cole and Holland & Knight Pertaining to the defense of the Florida Fourie action

(10) Copies of invoices from Senning & Rieder pertaining to the defense of the CIC Declaratory Judgment Action and the action against CIC, et al for wrongful rescission, etc.

*Perrotti Reserves to offer evidence in Rebuttal.*

13.  **Request for Jury Instructions:**

(Non-Jury)

14.  **Anticipated Evidentiary Problems:**

15.  **Proposed Finding and Conclusions of Law:**

A. **CIC's:**

1.  Plaintiff CIC, is a corporation organized and existing pursuant to the laws of one of the states of the United States with an office and place of business at 9 Farm Springs Road, Farmington, Connecticut, and is in the business of writing, *inter alia,* marine insurance.

2.  Defendant Perrotti is an individual residing at 136 Bradley Road, Woodbridge, Connecticut 06525.

3.    On or about October 19, 1999, Perrotti through Scott Haney, his insurance broker then with Dunlap Corp., submitted a Yacht Application to Marine MGA, Inc., an underwriting agent for CIC, for the purpose of obtaining a Yacht Hull and Protection & Indemnity Insurance Policy on a 1986 121 Foot Denison Yacht (the "Yacht"). Along with the Application, Perrotti submitted a survey of the Yacht, which reported that the Yacht was registered in the Cayman Islands.

4.    Perrotti is the owner of one hundred percent (100%) of the shares of Clean Waste Inc., is the President and sole Director. The $3,000,000 purchase price for the Yacht was paid from Perrotti's own funds and he is the sole use of the Yacht for recreational purposes.

5.    Clean Waste Inc. is a Cayman Island corporation and is the registered owner of the Yacht named N.E.W.S.

6.    As 100% shareholder of Clean Waste Inc., President of the company, the sole director and the sole user of the Yacht for recreational purposes, Perrotti had an insurable interest in the Yacht. The funds used to purchase the yacht were solely those of Perrotti.

7.    Perrotti notified CIC of a claim for damage to the Yacht's propeller, shafts and port main strut discovered on February 14, 2001. CIC investigated the claim, had a surveyor inspect the Yacht in Riviera Beach, Florida, and on or about April 9, 2001, CIC paid this claim in the amount of $26,162.29 after applying the policy's $25,000 deductible.

27

8.    William Taylor of Sterling Yacht Corp. managed the Yacht on Perrotti and Clean Waste Inc.'s behalf.

9.    Perrotti did not intentionally conceal or misrepresent to CIC the fact that the Yacht was or would be owned in the name of Clean Waste Inc. and registered in the Cayman Islands.  Perrotti submitted a survey to Marine MGA, along with the Application, which clearly stated that the Yacht was currently registered in the Cayman Islands.  The Application contained a space to indicate where the yacht would be "principally moored" which Perrotti indicated to be in Rhode Island.

10.   A memo from Bill Taylor of Sterling Yacht Corp. was sent, along with the insurance Application to Marine MGA.  The memo stated, inter alia, that Perrotti was considering keeping the Yacht under Cayman Registry.

11.   John Sterling ("Sterling") of Marine MGA, did not tell Perrotti or Haney, his insurance broker, that CIC would not insure the Yacht if it was registered in the Cayman Islands.

12.   During the time the Yacht was insured by CIC, the Yacht never went to the Cayman Islands or anywhere in the Caribbean.  CIC's Application for insurance did not ask where the Yacht was registered, nor did it ask for the name of the registered owner of the Yacht or its address.

13.   Perrotti provided to Marine MGA, at their request, a résumé of the Captain of the Yacht.

14. In October of 2000, Scott Haney forwarded to Sterling at Marine MGA, a Bill of Sale for a 22 foot Hackercraft that had been purchased by Clean Waste, Inc. and requested that it be included in the Policy. The Bill of Sale indicated Clean Waste, Inc. as the purchaser and an address for Clean Waste, Inc. in Georgetown, Cayman Islands. The Bill of Sale was accompanied by a First Assignment which indicated that ownership had been transferred to Clean Waste, Inc. with an address in George Town, Cayman Island. Neither document made any reference to Perrotti. Sterling included the Hackercraft on the Policy. This was prior to the renewal date of the Policy in October of 2000.

15. On or about February 24, 2001, Scott Haney sent a Property Loss Notice to Marine MGA stating that the Yacht has suffered propeller damage. Mark Rhodes surveyed the damage to the Yacht on February 21, 2001 while the Yacht was in dry-dock in Riviera Beach, Florida. (*See* CIC Bates No. 00046). On April 4, 2001, CIC paid $26,162.29 for the propeller damage claim to Clean Waste Inc. after applying the policy deductible of $25,000.

16. On or about August 8, 2000, Johan Fourie ("Fourie"), a crew member on board the Yacht, was injured while it was taking fuel in Newport, Rhode Island.

17. Fourie filed suit against Clean Waste, Inc. and Frank Perrotti *in personam* ("The Fourie Action") and the motor Yacht N.E.W.S. *in rem* in the United States District for the Southern District of Florida on November 13, 2001, Case No.: SDFL 01-7735-Civ.-Martinez.

18.     Defendant Perrotti notified CIC of the filing of the Fourie Action and requested

that they undertake the defense of the action, and or settle and pay the claim.  CIC

refused to undertake a defense of the action and breached its duty to defend

Perrotti under the terms of the Policy.  CIC had a duty to defend Perrotti under the

terms of the Policy with a reservation of rights.

19.     On or about January 28, 2003, judgment was entered against Perrotti, Clean

Waste, Inc. in personan, and the vessel *in rem* in the amount of $600,000.00.

20.     Due to CIC's refusal to undertake the defense of Perrotti and settle or pay the

claim, Perrotti was obligated to obtain the law firm of Holland & Knight in

Florida to defend the lawsuit, and the law firm of Robinson & Cole LLP in

Connecticut as co-counsel to defend the matter.  Holland & Knight's and

Robinson & Cole LLP's fees and expenses in defending the Fourie Action totaled

$251,472.93 for which CIC is responsible.

### Conclusions of Law

Perrotti did not intentionally misrepresent the registry of the Yacht, the ownership of the Yacht,

or the trading limits of the Yacht.  CIC wrongfully voided the policy and breached its duty to

defend Perrotti, and is liable for damage to Perrotti as follows:

1.     The Fourie Judgment of $600,000.00;

2.     The legal costs and fees of defending the Fourie Action which total $251,472.94;

3.     The legal costs and fees of defending this Declaratory Judgment action which

total $182,856.37; and

4.    Interest on each of the foregoing.

**5.    Trial Time:**

Two (2) to Three (3) Days

**6.    Further Proceedings:**

None.

**7.    Election for Trial by Magistrate:**

No.


Respectfully Submitted

PLAINTIFF
CONNECTICUT INDEMNITY COMPANY

By    *[signature]*
     James W. Carbin (CT13762)
     Duane Morris LLP
     744 Broad St., Suite 1200
     Newark, New Jersey  07102
     (973) 424-2000

DEFENDANT
FRANK PERROTTI, JR.

By    *[signature]*
     John L. Senning, Esq. (CT05807)
     Senning & Rieder
     The Essex Law Group
     16 Saybrook Road
     Essex, CT 06426
     (860) 767-2618
     email:  jlssealaw@aol.com
     His Attorney