Samuel B. Mayer, Esq. (CT14821)
46 Woodbury Avenue
Stamford, Connecticut 06907
(203) 324-0711

    -and-

James W. Carbin, Esq. (CT13762)
**DUANE MORRIS LLP**
744 Broad Street, Suite 1200
Newark, New Jersey 07102
(973) 424-2000

Attorneys for Plaintiff,
The Connecticut Indemnity Company

FILED

2004 AUG -3  A 10: 28

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE CONNECTICUT INDEMNITY COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK PERROTTI, JR.,<br><br>    Defendant. | Index No. 301CV1410 (RNC)<br><br><br>**PLAINTIFF'S CONNECTICUT INDEMNITY COMPANY'S PRETRIAL MEMORANDUM OF LAW** |

NWK\95305.1

## TABLE OF CONTENTS

                                                            **Page**

PRECIS .................................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

LEGAL ARGUMENT............................................................................................................ 4

POINT I ................................................................................................................................. 4

    I.    THIS IS AN ACTION UPON A MARINE POLICY SUBJECT TO THIS COURT'S ADMIRALTY JURISDICTION ..........................................................4

POINT II ................................................................................................................................ 4

    II.    A CORPORATION IS DISTINCT FROM IT SHAREHOLDER ..........................4

POINT III ............................................................................................................................... 5

    III.    THERE CAN BE NO CONTRACT ABSENT A MEETING OF THE MINDS....5

POINT IV .............................................................................................................................. 7

    IV.    ALTERNATIVELY, THE POLICY IS VOID BECAUSE OF THE INTENTIONAL MISREPRESENTATIONS INIT PROCUREMENT..................7

POINT V ................................................................................................................................ 7

    V.    THE UNDERLYING SEAMAN INJURY CLAIM COULD NOT RESULT ANY LIABILITY ON DEFENDANT. ...........................................................................7

POINT VI .............................................................................................................................. 9

    VI.    MARITIME LAW PRECLUDES ANY CLAIM FOR BAD FAITH OR PUNITIVE DAMAGES. ...........................................................................................9

CONCLUSION.................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*Advani Enters. v. Underwriters at Lloyds*, 140 F.3d 157 ..............................................3

*Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312 ......................................................7

*American National Fire Insurance Company v. Kenealy*, 72 F.3d 264 .................9, 10

*Aquilar v. Standard Oil Co.*, 318 U.S. 724 .....................................................................8

*Bartholomew, supra*, 279 F.2d .......................................................................................8

*Bator v. United Sausage Co.*, 138 Conn. 18 ..................................................................4

*Beardslee v. Automated Waste Disposal*, 1999 Conn. Super. 1999 .............................4

*Black v. Red Star Towing & Transp. Co.*, 860 F.2d 30 .................................................8

*Bloom v. Weeks Marine, Inc.*, 225 F. Supp.2d 1334 ......................................................8

*Calmar S.S. Corp. v. Taylor*, 303 U.S. 525 ....................................................................8

*Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 371 .....................................................8

*D.S. Assoc. v. Prospect Planning*, 1991 Conn. Super Ct. 1991 ....................................4

*Garay v. Carnival Cruise Lines, Inc.*, 716 F.Supp. 1421 ...............................................9

*Geary v. Wentworth Laboratories*, 60 Conn. App. 622 .................................................5

*Genovese Enters. v. Sphere Drake Ins.*, 1996 Conn. Super. Ct. 1996 ..........................4

*Hoffman v. Fidelity & Casualty Co.*, 125 Conn. 440 .....................................................5

*Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293 ...............................9, 10

*La Fontaine v. The G. M. McAllister*, 101 F. Supp. 826 ...............................................7

*Mahramas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165 .........................8

*McMillan v. Tug Jane A. Bouchard*, 885 F. Supp. 452 .................................................7

*Miles v. Melrose*, 882 F.2d 976 .................................................................................................10

*Norwalk Cove Marina, Inc. v. S/V Odysseus, Emerald Lady, Inc.*, 2003 U.S. App. ..................................................................................................................................9, 10

*Nova Dye & Print Co. v. Winogradow*, 2001 Conn. Super. Ct. 2001 ..........................5

*Phelan v. Everlith*, 1 Conn. Cir. Ct. 43, 1961 Conn. Cir. Ct. ........................................6

*Saphir v. Neustadt*, 177 Conn. 191 ...............................................................................4

*Sicaras v. Hartford*, 44 Conn. App. 771 ........................................................................5

*Sirius Ins. Co. (UK) v. Collins*, 16 F.3d 34 ................................................................3, 4

*The Federal No. 2*, 21 F.2d 313 ....................................................................................8

*The Hanna Neilsen*, 273 F. 171 ....................................................................................8

*The Osceola*, 189 U.S. 158 ............................................................................................8

*Weeks v. Reliance Ins. Co.*, 1985 U.S. Dist. ................................................................3

*Young v. Page*, 2004 Conn. Super. CT .........................................................................5

## PRECIS

The Marine Insurance Policy issued by Plaintiff to Defendant is either unenforceable because of a lack of a meeting of the minds to form a contract, or alternatively is void due to misrepresentations in the Application made to obtain a cheaper premium.

Further in the alternative, assuming *en arguendo*, the Policy is enforceable, there could not be any liability for Frank Perrotti, jr., the named insured, for a crewmember injury such as that claimed by Seaman John Fourhie in the underlying litigation.

## STATEMENT OF FACTS

On October 19, 1999, brokers for defendant Perrotti submitted a Yacht Application to Marine MGA, Inc.("MGA") for a Marine Hull and Protection & Indemnity insurance policy on a 1986 121' Denison Yacht, named the M/Y NEWS (the "Yacht").

The Application misrepresented that Perotti owned the yacht and that it was homeported in Rhode Island. The Yacht was owned by a Clean Waste, Inc., a foreign corporation domiciled in Cayman islands, was homeported there and registered under the British flag. This information should have been disclosed and wasn't. Both of Perotti's brokers concede the name on the Application was incorrect.

Perotti's broker J Lorinsky of First Nations, had previously obtained insurance quotes in the name of Clean Waste for the Yacht which were expensive because of the offshore operation. Perotti rejected the earlier insurance quotes as too expensive and directed Lorisnky to get a cheaper rate. Lorinsky then approached Scott Hainey of Dunlap Agency, Inc. to get cheaper insurance.

Contrary to the earlier insurance applications in the name of Clean Waste, the application submitted to MGA hid the true foreign corporate ownership, homeport and registration.

Pursuant to the Managing General Agency Agreement authority given by CIC, Marine MGA did not have authority to issue a policy for a vessel owned by a foreign corporation or homeported or registered outside the United States.

Lorisnky testified he told Hainey of the prior applications and of Clean Waste, Inc., when he told Hainey he would need him to "do better" on the quote.

Hainey denies ever being told of Clean Waste.

Both Hainey and Lorisnky concede the Application is wrong because it should have been in name of the corporate owner Clean Waste, not Frank Perotti.

Either Hainey knew of Clean Waste and misled MGA to get a lower premium, or he did not know of Clean Waste in which case there was no meeting of the minds to insure a vessel homeported in Caymans Islands and owned by Clean Waste, a foreign corporation.. The Policy should be either rescinded or ruled unenforceable.

## LEGAL ARGUMENT

### POINT I

### I. THIS IS AN ACTION UPON A MARINE POLICY SUBJECT TO THIS COURT'S ADMIRALTY JURISDICTION

There is no dispute that this litigation arises form a Marine Insurance policy.

It has long been held that marine insurance policies and the claims that arise directly from them are within federal Admiralty jurisdiction. See Advani Enters. v. Underwriters at Lloyds, 140 F.3d 157, 162 (2d Cir. 1998); Sirius Ins. Co. (UK) v. Collins, 16 F.3d 34, 36 (2d. Cir. 1994); Weeks v. Reliance Ins. Co., 1985 U.S. Dist. LEXIS 21533 (S.D.N.Y. March 21, 1985).

> [M]aritime jurisdiction applies to 'all contracts ... which relate to the navigation, business, or commerce of the sea.

Sirius Ins. Co. (UK) Limited v. Collins, 16 F.3d 34, 36 (2d Cir. 1994).

Marine Insurance contracts have long been held within the Admiralty jurisdiction and subject to the maritime law of the United States. Id.

### POINT II

### II. A CORPORATION IS DISTINCT FROM IT SHAREHOLDER

It is well recognized that a corporation is a distinct legal person from its owners. Connecticut and Cayman Islands law both recognize this maxim.

Connecticut recognizes corporations are separate legal entities, with separate rights and powers conferred and duties and liabilities imposed by law. See Beardslee v. Automated Waste Disposal, 1999 Conn. Super. LEXIS 2999 (Conn. Super. Ct 1999); Bator v. United Sausage Co., 138 Conn. 18, 22 (Conn. 1951). "A corporation is a distinct legal entity." Saphir v. Neustadt, 177 Conn. 191, 209 (Conn. 1979). Likewise, "a corporation is indisputably a legal entity separate and distinct from its shareholders, even its majority shareholders." Genovese Enters. v. Sphere Drake Ins., 1996 Conn. Super. LEXIS 771 (Conn. Super. Ct. 1996)(emphasis

added)(citation omitted); see also D.S. Assoc. v. Prospect Planning, 1991 Conn. Super. LEXIS 1298 (Conn. Super. Ct. 1991)("corporation is a ... legal entity separate from its shareholders").

Cayman Islands law also recognizes the distinction. Clean Waste sought to benefit from the corporate form under Cayman Island law when it was formed and elected to register and homeport the vessel in Grand Cayman.

## POINT III

### III. THERE CAN BE NO CONTRACT ABSENT A MEETING OF THE MINDS

"To form a valid and binding contract ... there must be a mutual understanding of the terms that are definite and certain between the parties ... To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties ... If the minds of the parties have not truly met, no enforceable contract exists ... An agreement must be definite and certain as to its terms and requirements ... So long as any essential matters are left open for further consideration, the contract is not complete."
Geary v. Wentworth Laboratories, 60 Conn. App. 622, 627 (Conn. 2000)(internal quotations marks omitted.)(*citing* L & R Realty v. Connecticut National Bank, 53 Conn. App. 524, cert. denied, 250 Conn. 901 (Conn. 1999).

"Meeting of the minds is defined as <u>mutual agreement and assent of two parties to contract to substance and terms</u>. ... This definition refers to fundamental misunderstandings between the parties as to what are the essential elements or subjects of the contract." Sicaras v. Hartford, 44 Conn. App. 771, 784 (emphasis added), cert. denied, 241 Conn. 916 (Conn. 1997)(citations omitted)(internal quotations omitted).

A misunderstanding between the parties prevents an enforceable contract. See Young v. Page, 2004 Conn. Super. LEXIS 1671 (Conn. Super. CT. 2004); Nova Dye & Print Co. v. Winogradow, 2001 Conn. Super. LEXIS 1246 (Conn. Super. Ct. 2001); Hoffman v. Fidelity & Casualty Co., 125 Conn. 440, 443-44 (1939).

This is equally true of insurance contracts. See, e.g., Phelan v. Everlith, 1 Conn. Cir. Ct. 43, 1961 Conn. Cir. LEXIS 79 (Conn. Cir. Ct. 1961).

Restatement of the Law, Second, Contracts (1981). Section 153, entitled "When Mistake of One Party Makes a Contract Voidable," states:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake.

Section 154, provides in relevant part:

> A party bears the risk of mistake when ... (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, (c) the risk is allocated to him by the court on the ground that it is reasonable.

The identity of the other party . . . is a basic assumption on which a contract is made. Thus, a contract is voidable by the mistaken party, under the rule stated in Subparagraph (b), if "the other party has caused a mistake as to his identity or if he had reason to know of the mistake, as long as it has a material effect on the agreed exchange of performances." See Comment g, § 153.

Clearly, CIC and its agent MGA has d no way of knowing that the true owner of the vessel was Clean Waste. This "mistaken" information was entirely Defendant's fault or those acting for him.

## POINT IV

### IV. ALTERNATIVELY, THE POLICY IS VOID BECAUSE OF THE INTENTIONAL MISREPRESENTATIONS INIT PROCUREMENT.

The evidence shows that the Defendant and his brokers were fixed on obtaining a lower premium cost for the coverage, and withheld the true identity of the vessel's corporate ownership and it offshore homeport and registration to achieve a lower cost form Plaintiff's agent when applying for the Policy. This renders the Policy void under the law and as per clause 12 of the Policy.

## POINT V

### V. THE UNDERLYING SEAMAN INJURY CLAIM COULD NOT RESULT ANY LIABILITY ON DEFENDANT.

Seaman Fourhie was employed by Sterling Yachts, Inc., not defendant. A Seaman does not have a cause of action against someone other than his employer or the owner of his vessel.

The Jones Act is only enforceable against the Seaman's Employer. An injured seaman may seek three separate items of recovery in addition to those remedies afforded by the Jones Act: (1) maintenance and cure; (2) unseaworthiness of the vessel; and (3) maritime negligence. See La Fontaine v. The G. M. McAllister, 101 F. Supp. 826, 828 (S.D.N.Y. 1951)

The obligations arise from the contract of employment. Under General Maritime Law, "a *shipowner* is responsible for paying maintenance and cure following any injury or sickness incurred by a seaman *while in the shipowner's employ.*" McMillan v. Tug Jane A. Bouchard, 885 F. Supp. 452, 459 (E.D.N.Y. 1995)(emphasis added); Alvarez v. Bahama Cruise Line, Inc., 898

F.2d 312, 314 (2d Cir. 1990)("the shipowner remains responsible 'for the expense of curing it *as an incident of the marine employer-employee relationship* '")(quoting Aquilar v. Standard Oil Co., 318 U.S. 724, 730 (1943); Mahramas v. American Export Isbrandtsen Lines, Inc., 475 F.2d 165, 170 (2d Cir. 1973)(" An action for maintenance and cure can also be maintained *only against the employer* because the right arises out of and is implied in the contract of employment"); Bloom v. Weeks Marine, Inc. 225 F. Supp.2d 1334, 1335 (M.D. Fla. 2002)("Maintenance and cure is the obligation imposed on a shipowner, which *results from the contract between the seaman and the shipowner or vessel*, to pay a seaman, who is ill or injured while in the service of the ship...."); see also Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 527-28 (1938); Cortes v. Baltimore Insular Line, Inc., 287 U.S. 371 (1932); Bartholomew, supra, 279 F.2d at 914, n.7.

The right to maintenance and cure is granted to seamen because of the employment relation, and the covenant of such obligation is implied by operation of law. See The Federal No. 2, 21 F.2d 313, 313-314 (2d Cir. 1927), ovrl'd on other grounds Black v. Red Star Towing & Transp. Co., 860 F.2d 30, 31 (2d Cir. 1988)(citing The Osceola, 189 U.S. 158 (1903) and The Hanna Neilsen, 273 F. 171 (2d Cir. 1921)). Thus, an action for maintenance and cure can only be maintained against the employer because the right arises out of and is predicated on the maritime employment relationship. See Aquilar v. Standard Oil Co., 318 U.S. 724, 730 (1943).

A claim for Failure to Treat also arises from the employment relationship. Like Maintenance and Cure, a claim for failure to treat also arises from the traditional duty of a shipowner to care for his employees. See Garay v. Carnival Cruise Lines, Inc., 716 F.Supp. 1421, 1423 (S.D. Fla. 1989), rev'd on other grounds 904 F.2d 1527 (11th Cir. 1990), reh den. en banc 915 F.2d 698 (1990), cert den 498 U.S. 1119 (1991). A personal injury action in admiralty

brought by a seaman is characterized as a breach of the duty of maintenance and cure predicated upon the employment relationship. See Garay, supra, 716 F.Supp. at 1423.

### POINT VI

### VI. MARITIME LAW PRECLUDES ANY CLAIM FOR BAD FAITH OR PUNITIVE DAMAGES.

The Second Circuit decision in Norwalk Cove Marina, Inc. v. S/V Odysseus, Emerald Lady, Inc., 2003 U.S. App. Lexis 10651 *1 (2d Cir. May 27, 2003), recognized that established Federal Admiralty law preempts Connecticut state law claims for bad faith/punitive damages and violations of CUTPA and CUIPA. Norwalk Cove Marina, Inc. v. S/V Odysseus, Emerald Lady, Inc., 2003 U.S. App. Lexis 10651 *1 (2d Cir. May 27, 2003).

Norwalk reaffirmed the Circuit Court's rulings in American National Fire Insurance Company v. Kenealy, 72 F.3d 264 (2d Cir. 1995) and Ingersoll Milling Machine Co. v. M/V Bodena, 829 F.2d 293 (2d Cir. 1987) cert. denied 484 U.S. 1042, 108 S. Ct. 774 (1988), and applied them to claims under Connecticut state law for bad faith/punitive damages of exactly the type defendant seeks to assert. Norwalk demonstrates that that the Second Circuit recognizes an established Federal Admiralty rule of law that preempts defendants' Connecticut state law claims for bad faith/punitive damages, CUTPA and CUIPA.

Defendants' claims for bad faith/punitive damages, CUTPA and CUIPA are preempted by Federal Admiralty law, and should be dismissed.

In Norwalk, the Second Circuit dismissed the defendants' Connecticut state law counterclaims based on CUTPA and for punitive damages on the grounds that the counterclaims were preempted by Federal Admiralty law. Id., citing American National Fire Ins. Co. v. Kenealy, 72 F.3d 264, 270-71 (2d Cir. 1995) (attorneys' fees); Ingersoll Milling Machine Co. v.

M/V Bodena, 829 F.2d 293, 309 (2d Cir. 1987) (same); cf. Miles v. Melrose, 882 F.2d 976, 989 (5th Cir. 1989) (punitive damages).

## CONCLUSION

Plaintiff respectfully requests judgment in its favor ruling the Policy void or unenforceable, or that the claim of Fourhie was not one for Perotti could be liable, dismiss the Counterclaim of defendant with prejudice and grant such other and further relief as the court deems proper.

                                                Respectfully submitted,

                                                DUANE MORRIS LLP
                                                A Delaware Limited Liability Partnership

                                                By: /s/ James W. Carbin /DMN/
                                                   James W. Carbin, Esq. (CT13762)
                                                   Attorneys for Plaintiff,
                                                   The Connecticut Indemnity Co.

Dated: August 2, 2004

Samuel B. Mayer, Esq. (CT14821)
46 Woodbury Avenue
Stamford, Connecticut 06907
(203) 324-0711

    -and-

James W. Carbin, Esq. (CT13762)
**DUANE MORRIS LLP**
744 Broad Street, Suite 1200
Newark, New Jersey 07102
(973) 424-2000

Attorneys for Plaintiff,
The Connecticut Indemnity Company

FILED

2004 AUG -3  A 10: 28

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE CONNECTICUT INDEMNITY COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>FRANK PERROTTI, JR.,<br><br>    Defendant. | Index No. 301CV1410 (RNC) |

## CERTIFICATE OF SERVICE

I, Denise M. Nyczepir, of full age, certifies as follows:

1.    On August 2, 2004, I caused one original and three (3) copies of Plaintiff's Connecticut Indemnity Company's Pre-Trial Memorandum of Law and Plaintiff's Proposed Findings of Fact and Conclusions of Law, to be filed with the Clerk of the Court, United States District Court, District of Connecticut, Hartford, whose address is Abraham Ribicoff Federal Building, 405 Main Street, Hartford, Connecticut 06103 via Federal Express.

NWK\95305.1

11

2.  On August 2, 2004, I caused true copies of the foregoing Plaintiff's Connecticut Indemnity Company's Pre-Trial Memorandum of Law and Plaintiff's Proposed Findings of Fact and Conclusions of Law to be served via Federal Express on all the following parties named below:

> Honorable Robert N. Chatigny, U.S.D.J.
> United States District Court
> District of Connecticut, Hartford
> Abraham Ribicoff Federal Building
> 450 Main Street
> Hartford, Connecticut 06106
>
> John L. Senning, Esq.
> Senning & Rieder
> The Essex Law Group
> 16 Saybrook Road
> Essex, CT 06426

3.  I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: Newark, New Jersey
August 2, 2004

By: _____
Denise M. Nyczepir